Doc# 2016029211
Doc# 2016029000

SBA Loan No.

This Deed of Trust is being Refiled to Correct the Date being left off.

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS,
& FINANCING STATEMENT

STATE OF TEXAS § §
COUNTY OF NUECES §   KNOW ALL MEN BY THESE PRESENTS:

That RANDY LEE MALDONADO and YVETTE RIVERA MALDONADO a/k/a YVETTE M. MALDONADO as to Tracts 1, 4 and 6, LOS POLLITOS, INC., a Texas corporation as to Tract 2, SIZZLIN FOODS, INC., a Texas corporation as to Tract 3, and PETE'S CHICKEN-N-MORE, INC., a Texas corporation as to Tract 5, whose address is 338 44th Street, Corpus Christi, Texas 78405, hereinafter called "Mortgagor" (whether one or more) for the purpose of securing the indebtedness hereinafter described, and in consideration of the sum of TEN DOLLARS ($10.00) to Mortgagor in hand paid by the Trustee hereinafter named, the receipt of which is hereby acknowledged, and for the further consideration of the uses, purposes and trusts hereinafter set forth, has granted, sold and conveyed, and by these presents does grant, sell and convey unto Kevin M. Marulst, Trustee, whose address is 1001 Third Street, Suite 1, Corpus Christi, Texas 78404 and his or its substitutes or successors, all of the following described property, to-wit:

(a)  That land located in Nueces County, Texas more particularly described as follows:

Tract 1:
Being all of Lot Ten (10) and the East fifty-four feet (E 54') of Lot Eleven (11), Block Seven (7), MEADOW PARK ADDITION, a Subdivision of the City of Corpus Christi, Nueces County, Texas, as shown by the map or plat thereof recorded in Volume 4, Page 52, Map Records of Nueces County, Texas, to which reference is here made for all pertinent purposes; SAVE AND EXCEPT the North thirty feet (N 30') thereof conveyed to the City of Corpus Christi to widen Agnes Street per Right of Way Deed dated May 1, 1928, recorded under Clerk's File No. 52749, Volume 182, Page 403, Deed Records of Nueces County, Texas.

Tract 2:
Being the West two feet (W 2') of Lot Eleven (11), all of Lot Twelve (12), and the East twelve feet (E 12') of Lot Thirteen (13), Block Seven (7), MEADOW PARK ADDITION, a Subdivision of the City of Corpus Christi, Nueces County, Texas, as shown by the map or plat thereof recorded in Volume 4, Page 52, Map Records of Nueces County, Texas, to which reference is here made for all pertinent purposes; SAVE AND EXCEPT the North thirty feet (N 30') thereof conveyed to the City of Corpus Christi to widen Agnes Street per Right of Way Deed dated May 1, 1928, recorded under Clerk's File No. 52749, Volume 182, Page 403, Deed Records of Nueces County, Texas.

Tract 3:
Block B-Four (B-4), PORT AYERS SUBURBAN CENTER, a Subdivision of the City of Corpus Christi, Nueces County, Texas, as shown by the map or plat thereof recorded in Volume 25, Page 22, Map Records of Nueces County, Texas, to which reference is here made for all pertinent purposes.

Tract 4:
Lot Eight (8), Block Twenty-Nine (29), COUNTRY CLUB ESTATES UNIT 14, a


EXHIBIT F

subdivision of the City of Corpus Christi, Nueces County, Texas, as shown by the map or plat thereof recorded in Volume 38, Pages 77-78, Map Records of Nueces County, Texas to which reference is here made for all pertinent purposes.

Tract 5:
A portion of Lot D-2, Block Ten (10), CORPUS CHRISTI INDUSTRIAL DISTRICT, SECTION 2, as shown on the map thereof, recorded in Volume 32, Page 75 of the Map Records of Nueces County, Texas, and being more particularly described by metes and bounds on Exhibit A attached hereto.

Tract 6:
Lot Nine (9), Block Seven (7), MEADOW PARK ADDITION, a Subdivision of the City of Corpus Christi, Nueces County, Texas, as shown by the map or plat thereof recorded in Volume 4, Page 52, Map Records of Nueces County, Texas, to which reference is here made for all pertinent purposes.

(b) All improvements now or hereafter situated on said land, together with and including all of the Mortgagor's right, title and interest in and to the rights and appurtenances in any way belonging or appurtenant to said land, including, without limitation: (i) strips and gores, if any, adjacent or contiguous to the land; (ii) any land lying in or under the bed of any street, alley, road, creek or stream running through, abutting or adjacent to the land; (iii) any riparian or water rights appurtenant to the land relating to surface or subsurface waters; and (iv) easements, rights of ingress and egress and reversionary interests benefitting or serving the land.

(c) Any and all leases, master leases, subleases, licenses, concessions, or other agreements (whether written or oral, or now or hereafter in effect) which grant to third parties a possessory interest in and to, or the right to use or occupy, all or any part of said land or any improvements thereon (the "leases"), together with all security and other deposits or payments made in connection therewith.

(d) All goods (including machinery, equipment, furniture, fixtures, and inventory) and general intangibles now owned or hereafter acquired by Mortgagor wherever located, including all proceeds thereof.

(e) All proceeds now or hereafter arising from the foregoing listed properties and types of properties.

All of the above types and items of properties are herein referred to as the "property".

This conveyance is subject to all lawful restrictive covenants and easements, if any, of record in the office of the County Clerk of the County in which said land is located and presently in force and affecting said land. There is also excepted herefrom all oil, gas and other minerals, if any, heretofore conveyed to others or reserved by Mortgagor's predecessors in title as shown by the records of said Clerk.

TO HAVE AND TO HOLD the above described property, together with the rights, privileges and appurtenances thereto belonging unto the said Trustee, and to the said Trustee's substitutes or successors forever. And Mortgagor does hereby bind itself and its successors to warrant and forever defend the property unto the said Trustee, and the Trustee's substitutes or successors and assigns forever, against the claim, or claims, of all persons claiming or to claim the same or any part thereof.

This conveyance, however, is made in TRUST to secure payment of the following:

(a) That certain promissory note of even date herewith executed by Randy Lee Maldonado, Yvette Rivera Maldonado a/k/a Yvette M. Maldonado, Pete's Chicken-N-More, Inc., Sizzlin Foods, Inc., and Los Pollitos, Inc. payable to the order of First Community Bank (herein called "Beneficiary") whose address is 416 N. Water Street, Corpus Christi, Texas 78401, described as follows, to-wit:

In the original principal sum of SIX HUNDRED NINETY-FIVE THOUSAND DOLLARS ($695,000.00) payable as therein stated.

(b) Any sums which may hereafter be advanced or paid by Beneficiary under the terms hereof together with interest thereon and attorney's fees as hereinafter provided;

(c) Any and all renewals and extensions of the foregoing, regardless of the number of or length of time of such renewals and extensions, and regardless of whether or not Mortgagor joins in or executes an agreement relating to such renewals and extensions.

Should Mortgagor do and perform all of the covenants and agreements herein contained, and make prompt payment of said indebtedness as the same shall become due and payable, then this conveyance shall become null and void and of no further force and effect, and shall be released at the expense of Mortgagor, by the holder thereof, herein called "Beneficiary" (whether one or more).

MORTGAGOR REPRESENTS, WARRANTS, COVENANTS AND AGREES that Mortgagor is lawfully seized of said property and has the right to convey the same; and that said property is free from all liens and encumbrances except as may herein be specifically set forth.

Mortgagor agrees to protect the title and possession of said property and to pay when due all taxes and assessments now existing or hereafter levied or assessed upon said property, or the interest therein created by this Deed of Trust, and to preserve and maintain the lien hereby created prior to all other liens except as may herein be specifically provided, and to not place or allow the creation or placement of any other liens on said property without the prior written approval of Beneficiary.

Mortgagor agrees to keep the improvements on said land, and any goods covered hereby, in good repair and condition, and not to permit or commit any waste thereof; to keep all buildings occupied so as not to impair the insurance carried thereon.

Mortgagor agrees to insure and keep insured all improvements now or hereafter created upon said land, and the goods covered hereby, against loss or damage by fire and windstorm, and any other hazard or hazards as may be reasonably required from time to time by Beneficiary during the term of the indebtedness hereby secured, to the extent of the amount of the indebtedness hereby secured, or to the extent necessary to prevent Mortgagor from being a co-insurer under the insurance policies, whichever is the greater, in such form and with such insurance company or companies authorized to do business in the State of Texas or an eligible surplus lines insurer as may be approved by Beneficiary. Without limiting the preceding, if the property is located in an area that has been or is hereafter identified by the Director of the Federal Emergency Management Agency ("FEMA") as a special flood hazard area using FEMA's Flood Insurance Rate Map or the Flood Hazard Boundary Map for the community in which the property is located, then Mortgagor will maintain flood insurance in an amount equal to the lesser of the insurable value of the property or maximum limit of coverage available. Mortgagor shall deliver to Beneficiary proof of payment of premiums for such insurance, and Beneficiary shall have the right to hold the policies and renewal certificates. Proof of renewals of policies shall be delivered to Beneficiary at least ten days before any insurance policy expires. All insurance policies shall contain a standard mortgage clause, and shall name the Beneficiary as mortgagee and/or as an additional loss payee. Any proceeds which Beneficiary may receive under any such policy, or policies, may be applied by Beneficiary at its own option, to reduce the indebtedness hereby secured, whether then matured or to mature in the future, and in such manner as Beneficiary may elect, or Beneficiary may permit Mortgagor to use said proceeds to repair or replace all improvements damaged or destroyed and covered by said policy.

MORTGAGOR MAY FURNISH THE INSURANCE REQUIRED OF MORTGAGOR BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY MORTGAGOR OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER AS MAY BE APPROVED BY BENEFICIARY. THE PREMIUM OR RATE OF CHARGE FOR ANY INSURANCE BENEFICIARY IS SELLING OR PROCURING IS NOT FIXED OR APPROVED BY THE STATE COMMISSIONER OF INSURANCE.

FAILURE TO PROVIDE INSURANCE: If Mortgagor fails to maintain any of the coverages described above, Beneficiary may at its option, but without being required to do so, obtain collateral protection insurance coverage at Beneficiary's option and Mortgagor's expense. Beneficiary is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Beneficiary, but might or might not

protect Mortgagor, Mortgagor's equity in the property, or the contents of the property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect; and Beneficiary may be the only person named to be paid under any policy obtained by Beneficiary. In addition, the insurance obtained by Beneficiary may not provide any liability protection for Mortgagor or property damage indemnification and may not meet the requirements of any financial responsibility laws. Mortgagor acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Mortgagor could have obtained.

Within 15 days of demand made by Beneficiary, and subject to applicable law, Mortgagor shall make an initial deposit in a reasonable amount determined by Beneficiary and then monthly payments to a fund for taxes and insurance premiums on the property. Monthly payments will be made on the payment date specified in the note, and each payment will be 1/12 of the amount that Beneficiary estimates will be required annually for payment of taxes and insurance premiums. Unless a written agreement to the contrary is made between Mortgagor and Beneficiary, or unless applicable law requires interest to be paid, the fund will accrue no interest, and Beneficiary will hold it without bond in escrow and use it to pay the taxes and insurance premiums. If Mortgagor has complied with the requirements of this paragraph, Beneficiary must pay the taxes or allow use of the fund for payment of taxes and/or insurance before delinquency. Mortgagor agrees to make additional deposits on demand if the fund is ever insufficient for its purpose. If an excess accumulates in the fund, Beneficiary may either credit it to future monthly deposits until the excess is exhausted or refund it to Mortgagor; provided, a refund of excess will in any event be made to the extent required by applicable law. Before Mortgagor makes the final payment on the note, Beneficiary will credit to that payment the whole amount then in the fund or, at Beneficiary's option, refund it after the note is paid. The fund is hereby pledged as additional security for all indebtedness secured hereby. If this Deed of Trust is foreclosed, any balance in the fund over that needed to pay taxes, including taxes accruing but not yet payable, and to pay insurance premiums will be first applied to the balance, if any, of indebtedness secured hereby and the remainder, if any, refunded to Mortgagor. Deposits to the fund described in this paragraph are in addition to the monthly payments provided for in the note.

Mortgagor agrees to comply with all terms and conditions of any loan agreement made in connection with the indebtedness secured hereby.

With respect to any substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials" or "toxic substances" under any applicable federal, state or local laws, ordinances or regulations (including, without limitation, friable asbestos and asbestos deemed hazardous by federal or state regulations) (such substances collectively referred to hereinafter as "Hazardous Materials" and such laws, ordinances and regulations together with all rules, orders and permits pursuant thereto collectively referred to hereinafter as "Hazardous Materials Laws"), Mortgagor:

(a) represents that (except as to Hazardous Materials violations that have been remedied as required by governmental authorities having jurisdiction of the matter) neither Mortgagor nor any affiliate, employee, or agent of Mortgagor nor, to the best of Mortgagor's knowledge, any of Mortgagor's predecessors in title (i) has ever stored, buried, installed, transported, treated or disposed of any Hazardous Materials at, to or from the property in violation of any applicable Hazardous Materials Laws, (ii) has ever caused or was legally responsible for the release, discharge, emission, leak, spill or dumping of any Hazardous Materials at or from the property except for those releases allowed under applicable Hazardous Materials Laws, or (iii) has ever received notification from any federal, state or other governmental authority of the presence or potential or actual release of any Hazardous Materials at or from the property;

(b) covenants to (i) comply with all applicable Hazardous Materials Laws with respect to the manufacture, storage, transmission, presence, discharge and removal of Hazardous Materials at or from the property, (ii) pay promptly when due the costs of any required removal of any Hazardous Materials from the property and to keep the property free of any lien imposed pursuant to any Hazardous Materials Laws, (iii) not locate nor allow location of any underground storage tanks on the property, and (iv) notify Beneficiary promptly in writing of the commencement of any legal or regulatory proceedings relating to Hazardous Materials affecting the property; and

(c) agrees to indemnify and to hold harmless Beneficiary, its officers, employees, agents, successors and assigns (the "Indemnitees") from and against, and to reimburse the Indemnitees with respect to, any and all claims, demands, causes of action, loss, damage, liabilities, costs, and expenses (including

- 4 -

4

attorneys' fees and court costs) of any and every kind or character, known or unknown, fixed or contingent, asserted against or incurred by the Indemnitees at any time or from time to time, whether as beneficiary under the Deed of Trust, as mortgagee in possession, or as successor-in-interest to Mortgagor by foreclosure deed or deed in lieu of foreclosure, by reason of or arising out of any violation of any Hazardous Materials Laws (including, without limitation, all claims, demands, loss, damage, liabilities, costs and expenses in connection with the presence on the property or release from or to the property of Hazardous Materials disposed of or otherwise released), regardless of whether the act, omission, event, or circumstance constituted a violation of applicable law at the time of existence or occurrence. Mortgagor's obligations hereunder shall arise upon the discovery of the presence of any Hazardous Materials, whether or not any federal agency or any state or local environmental agency has taken or threatened any action in connection with the presence of any Hazardous Materials. The foregoing indemnity shall survive the repayment of the indebtedness secured hereby and the release of the lien of the Deed of Trust and shall survive the transfer of any or all right, title and interest in and to the property by Mortgagor to any other party.

In the event Mortgagor fails, after reasonable notice, to pay any amounts described in clause (b)(ii) immediately above, Beneficiary may, but shall not be obligated to, cause the Hazardous Materials to be removed from the property and the cost of such removal shall be added to the indebtedness secured hereby (regardless of whether such addition increases the outstanding balance of the indebtedness secured hereby to an amount in excess of the face amount of any notes described herein). Beneficiary shall have the right at reasonable times and reasonable intervals, following reasonable advance notice to Mortgagor, to conduct an environmental audit of the property and Mortgagor shall cooperate in the conduct of such environmental audit. Mortgagor shall pay the cost of environmental audits of the property conducted for the benefit or at the request of Beneficiary.

In the event Mortgagor shall fail to keep the improvements on the land hereby conveyed or the goods covered hereby in good repair and condition, or to pay promptly when due all taxes and assessments, as aforesaid, or to preserve the lien status as herein warranted on said property, or to keep the buildings, improvements and goods insured, as aforesaid, or to deliver the policy, or policies, of insurance or the renewal thereof to Beneficiary, as aforesaid, or to promptly, fully and timely observe or perform any covenant or obligation of Mortgagor contained herein, then Beneficiary may, at its option, but without being required to do so, make such repairs, pay such taxes and assessments, purchase any tax title thereon, remove any other liens, and prosecute or defend any suits in relation to the preservation of the lien status herein warranted on said property, or insure and keep insured the improvements thereon in an amount not to exceed that above stipulated, or perform such other covenants and obligations. No such payment by Beneficiary shall constitute a waiver of any default. The amounts paid by Beneficiary shall be a part of the indebtedness secured hereby. In addition to the liens and security interests hereof, Beneficiary shall be subrogated to all rights, titles, liens and security interests securing the payment of any debt, claim, tax or assessment for the payment of which Beneficiary may make an advance, or which Beneficiary may pay. Nothing herein shall impose any duty, obligation, or responsibility upon Beneficiary for the control, care, management, leasing, or repair of the property, nor for the carrying out of any of the terms and conditions of any leases; nor shall it operate to make Beneficiary liable for any negligence in the management, leasing, upkeep, repair, or control of the property resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

Mortgagor will reimburse Beneficiary for all amounts expended by Beneficiary to satisfy any obligation of Mortgagor under this Deed of Trust or to protect the Property. In addition, whether or not a default shall have occurred, Mortgagor will pay, or reimburse Beneficiary for, all costs and expenses, of every character incurred or expended from time to time in connection with the evaluation, monitoring, administration and protection of the Property, the exercise by Beneficiary of any of its rights and remedies hereunder or at law (including, but not limited to all appraisal fees, consulting fees, brokerage fees and commissions, insurance premiums, Uniform Commercial Code search fees, fees incident to title searches and reports, investigation costs, environmental reports and studies, escrow fees, attorneys' fees, legal expenses, fees of auditors and accountants, court costs, fees of governmental authorities, auctioneer fees and expenses, and all fees and expenses incurred in connection with the marshalling, guarding, management, operation, removal, maintenance, cleanup, storage, auction and liquidation of the Property). Any amounts to be paid or reimbursed by Mortgagor to Beneficiary shall be a demand obligation owing by Mortgagor to Beneficiary and, to the extent not prohibited by law, shall bear interest from the date of expenditure by Beneficiary until paid at the same rate provided for past-due principal and interest in the principal obligation (the "Past Due Rate"). The principal obligation shall be (1) the note secured hereby; (2) if more than one note is secured hereby, the note with the largest face amount; and (3) if no note is secured hereby, the obligation with the largest face amount.

- 5 -

In the event of default in the payment of said indebtedness when due or declared due, it shall thereupon, or at any time thereafter, be the duty of the Trustee, or the Trustee's successor or substitute as hereinafter provided, at the request of Beneficiary (which request is hereby conclusively presumed), to enforce this trust; and after advertising the time, place and terms of the sale of the above-described and conveyed property then subject to the lien hereof which is to be sold as directed by the Beneficiary, and mailing and filing notices as required by Section 51.002, Texas Property Code, as then amended (successor to Article 3810, Texas Revised Civil Statutes), and otherwise complying with that statute, the Trustee may sell the above-described property then subject to the lien hereof, or such portions thereof as directed by Beneficiary, at public auction in accordance with such notices on the first Tuesday in any month between the hours of ten o'clock A.M. and four o'clock P.M., to the highest bidder for cash, selling all of the property as an entirety or in such parcels as the Trustee acting may elect, and make due conveyance to the Purchaser or Purchasers, with general warranty binding Mortgagor, and Mortgagor's successors, heirs and assigns; and out of the money arising from such sale, the Trustee acting shall pay first all the expenses of advertising the sale and making the conveyance, including a reasonable commission not to exceed five percent (5%) to the Trustee, which commission shall be due and owing in addition to the attorney's fees provided for in said note, and then to Beneficiary the full amount of principal, interest, attorney's fees and other charges due and unpaid on said note and all other indebtedness secured hereby, rendering the balance (except for any amounts required by law to be paid before payment to Mortgagor) of the sales price, if any, to Mortgagor, and Mortgagor's successors, heirs or assigns; and the recitals in the conveyance to the Purchaser or Purchasers shall be full and conclusive evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed, and such sale and conveyance shall be conclusive against Mortgagor and Mortgagor's successors, heirs and assigns.

*Waiver of Deficiency Statute*. (a) In the event an interest in any of the property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Mortgagor agrees as follows. Notwithstanding the provisions of Section 51.003, 51.004 and 51.005 of the Texas Property Code (as the same may be amended from time to time), and except to the extent limited by law or limited by any written agreement executed by Beneficiary to the contrary, Mortgagor agrees that Beneficiary shall be entitled to seek a deficiency judgment from Mortgagor and any other party obligated on the indebtedness secured hereby equal to the difference between the amount owing on the indebtedness and the amount for which the property was sold pursuant to judicial or nonjudicial foreclosure sale. Mortgagor expressly recognizes that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Mortgagor and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Mortgagor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the property for purposes of calculating deficiencies owed by Mortgagor, any guarantor, and others against whom recovery of a deficiency is sought.

(b) Alternatively, in the event the waiver provided for in subsection (a) above is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time): (i) the property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the property will be repaired or improved in any manner before a resale of the property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the property for cash promptly (but no later than twelve (12) months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the property, including, without limitation, brokerage commissions, title insurance, a survey of the property, tax prorations, attorneys' fees, and marketing costs; (iv) the gross fair market value of the property shall be further discounted to account for any estimated holding costs associated with maintaining the property pending sale, including, without limitation, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership expenses; and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the property must be given by persons having at least five (5) years experience in appraising property similar to the property and who have conducted and prepared a complete written appraisal of the property taking into consideration the factors set forth above.

It is agreed that in the event a foreclosure hereunder should be commenced by the Trustee, or the Trustee's substitute or successor, Beneficiary may at any time before the sale of said property direct the said Trustee to abandon the sale, and may then institute suit for the collection of said note, and for the foreclosure of this Deed of Trust lien; it is

- 6 -

further agreed that if Beneficiary should institute a suit for the collection thereof, and for a foreclosure of this Deed of Trust lien, that he may at any time before the entry of a final judgment in said suit dismiss the same, and require the Trustee, or the Trustee's substitute or successor, to sell the property in accordance with the provisions of this Deed of Trust. Sale of a part or parcel of the property covered hereby shall not exhaust the power of sale, and sales may be made from time to time until all property covered hereby is sold, or until all indebtedness secured hereby is paid in full.

Beneficiary, if it is the highest bidder, shall have the right to purchase at any sale of the property and to have the amount for which such property is sold credited on the debt then owing.

Beneficiary in any event is hereby authorized to appoint a substitute trustee, or a successor trustee, to act instead of the Trustee named herein without other formality than the designation in writing of a substitute or successor trustee; and the authority hereby conferred shall extend to the appointment of other successor or substitute trustees successively until the indebtedness hereby secured has been paid in full, or until said property is sold hereunder, and each substitute and successor trustee shall succeed to all of the rights and powers of the original trustee named herein.

In the event any sale is made of the property, or any portion thereof, under the terms of this Deed of Trust, Mortgagor, its successors, heirs and assigns, shall forthwith upon the making of such sale surrender and deliver possession of the property so sold to the Purchaser at such sale, and in the event of their failure to do so they shall thereupon from and after the making of such sale be and continue as tenants at will of such Purchaser, and in the event of their failure to surrender possession of said property upon demand, the Purchaser, and the Purchaser's successors, heirs and assigns, shall be entitled to institute and maintain an action for forcible detainer of said property in the Justice of the Peace Court in the Justice Precinct in which such property, or any part thereof, is situated.

It is agreed that the lien hereby created shall take precedence over and be a prior lien to any other lien of any character (except for any lien herein specifically stated to which this Deed of Trust is subject to), whether vendor's, materialmen's or mechanic's lien hereafter created on the property, and in the event the proceeds of the indebtedness secured hereby as set forth herein are used to pay off and satisfy any liens heretofore existing on said property, then Beneficiary is, and shall be, subrogated to all of the rights, liens and remedies of the holders of the indebtedness so paid.

It is further agreed that if Mortgagor, its successors, heirs or assigns, while the owner of the hereinabove described property, should commit an act of bankruptcy, or authorize the filing of a voluntary petition in bankruptcy, or should an act of bankruptcy be committed and involuntary proceedings instituted or threatened, or should the property be taken over by a receiver for Mortgagor, its heirs, successors or assigns, all indebtedness secured hereby shall, at the option of Beneficiary, immediately become due and payable, and the acting Trustee may then proceed to sell the property under the provisions of this Deed of Trust.

It is agreed that an extension, or extensions, may be made of the time of payment of all, or any part, of the indebtedness secured hereby, and that any part of the property may be released from this lien without altering or affecting the priority of the lien created by this Deed of Trust in favor of any junior encumbrancer, mortgagee or purchaser, or any person acquiring an interest in the property hereby conveyed, or any part thereof; it being the intention of the parties hereto to preserve this lien on the land herein described and all improvements thereon, and that may be hereafter constructed thereon, first and superior to any liens that may hereafter be placed thereon, or that may be fixed, given or imposed by law thereon after the execution of this instrument notwithstanding any such extension of the time of payment, or the release of a portion of said property from this lien.

In the event any portion of the indebtedness hereinabove described cannot be lawfully secured by the lien herein granted, it is agreed that the first payments made on said indebtedness shall be applied to the discharge of that portion of said indebtedness.

Beneficiary shall be entitled to receive any and all sums which may become payable to Mortgagor for the condemnation of the hereinabove described property, or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any sums which may be awarded or become payable to Mortgagor for damages caused by public works or construction on or near the said property. All such sums are hereby assigned to Beneficiary, who may, after deducting therefrom all expenses actually incurred, including attorney's fees, release same to Mortgagor or apply the same to the reduction of the indebtedness hereby secured, whether then matured or to mature in the future, or on any money obligation hereunder, as and in such manner as Beneficiary may elect. Beneficiary shall not be, in any

- 7 -

event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such sums.

Nothing herein or in said note shall ever entitle Beneficiary, upon the arising of any contingency whatsoever, to receive or collect interest in excess of the highest rate allowed by the laws of the State of Texas on the principal indebtedness hereby secured or on any money obligation hereunder and in no event shall Mortgagor be obligated to pay interest thereon in excess of such rate. To the extent permitted by applicable law, determination of the legal maximum amount of interest shall at all times be made by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the Note, all interest at any time contracted for, charged or received with respect to the Note and the indebtedness, so that the actual rate of interest with respect to the note and indebtedness is uniform throughout the stated term of the Note.

The term "Mortgagor" as used in this instrument will be construed as singular or plural to correspond with the number of persons executing this instrument as Mortgagor. If more than one person executes this instrument as Mortgagor, his, her, their, or its duties and liabilities under this instrument will be joint and several, and the grants of liens and security interests herein made shall cover each such person's joint interest as well as his several interest in the property mortgaged hereunder. It is intended that the lien on each particular person's interest executing this instrument as Mortgagor shall cover the entire indebtedness described herein as being secured hereby; and it is not intended that the interest of such a particular person in the property covered hereby shall secure only that particular person's liability on the indebtedness; nor is it intended that any such particular person may have that particular person's interest in the property released from the liens hereof unless and until the entire indebtedness secured hereby has been satisfied. The terms "Beneficiary" and "Mortgagor" as used in this instrument include the heirs, executors or administrators, successors, representatives, receivers, trustees, and assigns of those parties. This instrument is binding upon the Mortgagor, the Mortgagor's successors, heirs and assigns (subject to the prohibition of assignment of the property as set forth herein), and will inure to the benefit of the Trustee and the Trustee's successors and substitutes and Beneficiary and Beneficiary's successors and assigns.

Mortgagor assigns to Beneficiary, absolutely and not only as collateral, all present and future rent and other income and receipts from the property and all present and future accounts evidencing or arising from said rents, income and receipts. Leases are not assigned under this paragraph. Mortgagor warrants the validity and enforceability of the assignment. Mortgagor may as Beneficiary's licensee collect rent and other income and receipts as long as Mortgagor is not in default under the indebtedness secured hereby or this deed of trust. Mortgagor will apply all rent and other income and receipts to payment of the indebtedness secured hereby and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the indebtedness secured hereby and deed of trust, Mortgagor may retain the excess. If Mortgagor defaults in payment of the indebtedness secured hereby or performance of this deed of trust, Beneficiary may terminate Mortgagor's license to collect and then as Mortgagor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Mortgagor's obligations under the indebtedness secured hereby and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Mortgagor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law. Although this assignment of rents is intended to be absolute and unconditional as provided above, it is agreed that this assignment has no value except as a source of payment of the indebtedness secured hereby, and that the balance of said indebtedness shall not be deemed to be reduced because of this assignment but shall be reduced only to the extent of rents received in good funds and actually applied to the reduction of said indebtedness as provided above.

Nothing contained herein, nor the exercise of any right, power, or authority herein granted to Beneficiary, or Trustee on Beneficiary's behalf, shall be construed to be an affirmation by it of any tenancy or lease, nor shall it constitute an assumption of liability under any such tenancy or lease, nor shall it constitute the subordination of the liens of this Deed of Trust to any such tenancy or lease. In addition, from time to time the Beneficiary may elect, and notice hereby is given to each lessee under any leases, to subordinate the lien of this Deed of Trust to any such leases by unilaterally executing and recording an instrument of subordination, and upon such election the lien of this Deed of Trust shall be subordinate to the leases identified in such instrument of subordination; provided that, in each instance such subordination will not affect or be applicable to, and shall expressly exclude, any lien, charge, encumbrance, security interest, claim, easement, restriction, option, covenant and other rights, titles, interest or estates of any nature whatsoever with respect to all or any portion of the property to the extent that the same may have arisen or intervened

during the period between the recordation of this Deed of Trust and the execution of the lease identified in such instrument of subordination.

Mortgagor waives the benefit of all laws now in existence or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the property, commonly known as Appraisement Laws, and (ii) the benefit of all laws that may be hereinafter enacted in any manner extending the time for the enforcement of the collection of the indebtedness or creating or extending a period of redemption from any sale made with respect to the indebtedness, commonly known as Stay Laws and Redemption Laws, to the extent Mortgagor may lawfully waive such laws.

Acceptance by Beneficiary of any payment in an amount less than the amount then due shall be deemed as acceptance on account only and the failure to pay the entire amount then due shall be and continue to be a default by Mortgagor; and at any time thereafter, and until the entire amount then due has been paid, Beneficiary shall be entitled to exercise all rights and remedies conferred it in this instrument or at law upon the occurrence of a default.

Beneficiary shall have the additional right, upon the commencement of any action to enforce the lien or security interest herein given, to have appointed by a court of competent jurisdiction, a receiver to take possession of the property and to collect all rents, issues, income, and profits arising from or pertaining to the property. This provision is a right created by this deed of trust and is cumulative of and is not to affect in any manner the right of Beneficiary to the appointment of a receiver under any applicable law or statute.

In the event Mortgagor conveys or enters into a contract for deed to convey the property covered hereby, or any interest in the property covered hereby, including a leasehold interest with an option to purchase, to a party or parties not appearing in this instrument without the written consent thereto of Beneficiary, then Beneficiary, at its option exercised any time after such event and without notice to Mortgagor or any transferee, may declare the entire indebtedness secured hereby at once due and payable. Additionally, if Mortgagor is a corporation, association, partnership, joint venture, company or other legal entity, in the event of any transfer or transfers of interest in Mortgagor, or in the event of the issuance of additional stock or admission of additional partners, associates or venturers, which: (a) results in the ownership of twenty-five percent (25%) or more of Mortgagor being different than on the date hereof; or (b) results in any person or entity ceasing to be a general partner or joint venturer; then Beneficiary, at its option exercised any time after such event and without notice to Mortgagor or any transferee, may declare the entire indebtedness secured hereby at once due and payable. The option of Beneficiary to declare the indebtedness due and payable may be exercised at any time after any such event, and the acceptance of one or more payments of principal and interest made after the date of such event shall not constitute a waiver of Beneficiary's option, regardless of the fact that Beneficiary may have knowledge of the event. The Beneficiary's approval of a particular event or failure to exercise said option upon learning of such an event shall not be construed as a waiver of the provisions hereof as regards any subsequent such event. Even if Beneficiary does approve a particular transaction, such shall not have the effect of releasing the Mortgagor or any guarantor from any liability for the payment of the indebtedness.

If Beneficiary's consent to a proposed transfer or other transaction is requested, Beneficiary shall have the right (in addition to its absolute right in its sole discretion and without cause or reason to refuse to consent to any such transaction) to condition its consent upon satisfaction of any one or more of the following requirements: (a) that the interest rate on the notes and indebtedness secured hereby be increased to a rate acceptable to Beneficiary; (b) that a reasonable transfer fee, in an amount determined by Beneficiary, be paid; (c) that Mortgagor and each transferee or other person involved execute such assumption agreements or other documents as Beneficiary shall reasonably require; (d) that the liability to Beneficiary of Mortgagor and all guarantors of any and all part of the indebtedness secured hereby will be confirmed by them in writing to be unaffected and unimpaired by any transfer or other such event.

Mortgagor shall not be entitled to release of the liens hereof on any portion of the property covered hereby (commonly known as "partial releases") upon payment of a portion of the indebtedness secured hereby; and the Mortgagor shall be entitled to release of any property covered hereby only upon satisfaction in full of the entire indebtedness secured hereby.

Without limiting any of the provisions of this instrument, the Mortgagor expressly:

(a)   Grants unto the Beneficiary, as a secured party, a security interest in all the property hereinabove described (including both those now and those hereafter existing) to the full extent that same may be subject to the Uniform Commercial Code, also known as the Texas Business and Commerce Code.

- 9 -

(b) Agrees that, in addition to any other remedies granted in this Instrument to the Beneficiary or Trustee, the Beneficiary may, in the event of any default, proceed under the Uniform Commercial Code as to all or any part of the personal property (tangible or intangible) and fixtures included in the property described herein (such portion of the property being herein referred to as "Collateral") and shall have and may exercise with respect to the Collateral all the rights, remedies and powers of a secured party under the Uniform Commercial Code. Without limiting anything in the foregoing to the contrary, Beneficiary or Trustee may proceed to foreclose as to personal property (and fixtures) in accordance with the rights and remedies herein provided as to real property pursuant to Section 9.604 of the Texas Business & Commerce Code.

(c) Agrees that Mortgagor will: take adequate care of the Collateral; pay all costs necessary to obtain, preserve, and enforce this security interest, collect the obligation, and preserve the Collateral, including (but not limited to) taxes, assessments, insurance premiums, repairs, reasonable attorney's fees and legal expenses, rent, storage costs, and expenses of sale; furnish Beneficiary with any information on the Collateral requested by Beneficiary; allow Beneficiary to inspect the Collateral, and inspect and copy all records relating to the Collateral and the obligation; sign any papers furnished by Beneficiary which are necessary to obtain and maintain this security interest; take necessary steps to preserve the liability of account debtors, obligors, and secondary parties whose obligations are part of the Collateral; notify Beneficiary of any change occurring in or to the Collateral, or in any fact or circumstance warranted or represented by Mortgagor in this agreement or furnished to Beneficiary, or if any event of default occurs.

THIS INSTRUMENT IS INTENDED AS A FINANCING STATEMENT as that term is used in the Texas Uniform Commercial Code covering the properties hereinabove described to the full extent same may be subject to the Texas Uniform Commercial Code. THIS INSTRUMENT (STATEMENT) IS TO BE FILED IN THE REAL ESTATE RECORDS AND COVERS FIXTURES. An originally signed copy of this instrument, or a photographic or other reproduction of an originally signed copy of this instrument, may be filed as a financing statement under the Uniform Commercial Code in Texas and other jurisdictions which permit such.

*"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*(a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

*(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*

Liens on Personal Property. The liens on the personal property are subject to any validly existing and properly filed financing statements with the Texas Secretary of State.

A portion of the said Promissory Note evidences funds to be advanced to Mortgagor for construction of improvements on Tract 1 pursuant to a Construction Loan Agreement of even date herewith between Mortgagor and Beneficiary. THIS INSTRUMENT IS A "CONSTRUCTION MORTGAGE" AS DEFINED IN SECTION 9.334 OF THE TEXAS BUSINESS AND COMMERCE CODE. The default or breach of any covenant, representation or warranty of Mortgagor contained in the Construction Loan Agreement shall constitute a breach of Mortgagor's

- 10 -

covenants contained herein, and upon such breach, Beneficiary may, at Beneficiary's sole option and in addition to all other remedies provided herein, declare the Note and the indebtedness to be accelerated and wholly due and payable. This Deed of Trust is being executed prior to the commencement of any work or the delivery of any materials for such construction; and Mortgagor agrees and represents that no work will be commenced nor materials delivered until the recording of this Deed of Trust.

Second Lien. The liens on Tract 5 are subordinate and inferior to that Deed of Trust, Security Agreement & Financing Statement dated August 27, 2014, executed by Pete's Chicken-N-More, Inc. in favor of Beneficiary securing payment of a note of even date therewith in the original principal of $341,250.00 executed by Pete's Chicken-N-More, Inc. payable to Beneficiary recorded at Document No. 2014033533, Official Public Records, Nueces County, Texas.

Renewal & Extension. As to Tract 4 and 5, the Note secured hereby is, in part, in renewal and extension of a prior note dated April 7, 2016, in the original principal sum of $205,000.00 executed by Randy Lee Maldonado, Yvette Rivera Maldonado a/k/a Yvette M. Maldonado, Pete's Chicken-N-More, Inc., and Los Pollitos, Inc. payable to the order of Beneficiary, as described in and secured by a prior Deed of Trust of even date therewith recorded at Document No. 2016014183, Official Public Records, Nueces County, Texas. This Deed of Trust is in part in renewal and extension of such prior Deed of Trust.

Dated the 14 day of July, 2016.

_____
Randy Lee Maldonado

_____
Yvette Rivera Maldonado a/k/a
Yvette M. Maldonado

LOS POLLITOS, INC.

By: _____
Randy Lee Maldonado, President

SIZZLIN FOODS, INC.

By: _____
Yvette Rivera Maldonado, President
a/k/a Yvette M. Maldonado

PETE'S CHICKEN-N-MORE, INC.

By: _____
Randy Lee Maldonado, President

- 11 -

STATE OF TEXAS          §
                                      §
COUNTY OF NUECES     §

     This instrument was acknowledged before me on the ___14___ day of ___July___, 2016, by RANDY LEE MALDONADO and YVETTE RIVERA MALDONADO a/k/a YVETTE M. MALDONADO.

                                                      Notary Public, State of Texas

[Notary stamp: PAM MOSLEY, Notary ID #: 676474-6, My Commission Expires 01/23/2020]

STATE OF TEXAS          §
                                      §
COUNTY OF NUECES     §

     This instrument was acknowledged before me on the ___14___ day of ___July___, 2016, by RANDY LEE MALDONADO, President of LOS POLLITOS, INC., a Texas corporation, on behalf of said corporation.

                                                      Notary Public, State of Texas

[Notary stamp: PAM MOSLEY, Notary ID #: 676474-6, My Commission Expires 01/23/2020]

STATE OF TEXAS          §
                                      §
COUNTY OF NUECES     §

     This instrument was acknowledged before me on the ___14___ day of ___July___, 2016, by YVETTE RIVERA MALDONADO a/k/a YVETTE M. MALDONADO, President of SIZZLIN FOODS, INC., a Texas corporation, on behalf of said corporation.

                                                      Notary Public, State of Texas

[Notary stamp: PAM MOSLEY, Notary ID #: 676474-6, My Commission Expires 01/23/2020]

STATE OF TEXAS          §
                                      §
COUNTY OF NUECES     §

     This instrument was acknowledged before me on the ___14___ day of ___July___, 2016, by RANDY LEE MALDONADO, President of PETE'S CHICKEN-N-MORE, INC., a Texas corporation, on behalf of said corporation.

                                                      Notary Public, State of Texas

[Notary stamp: PAM MOSLEY, Notary ID #: 676474-6, My Commission Expires 01/23/2020]

Return to:
First Community Bank
5406 Everhart Road
Corpus Christi, Texas 78411

12

EXHIBIT "A"

STATE OF TEXAS  
COUNTY OF NUECES

JOB NO. 16-6318

6.710 ACRES

ALL that certain tract or parcel of land situated in Nueces County, Texas, same lying within the Corporate City Limits of Corpus Christi, Texas, same being out of Lot D-2, Block 10, Corpus Christi Industrial District Section 2 as recorded in Volume 32, Page 75 of the Map Records of Nueces County, Texas, same being the property as conveyed and described in Document No. 2008007538 of the Official Records of Nueces County, Texas, and being more particularly described by metes and bounds as follows, to wit:

BEGINNING at a 5/8 inch iron rod found for the West Northwest corner of this tract, same being the South corner of Lot 1, Driscoll Industrial Tracts as recorded in Volume 46, Page 217 of the Map Records of Nueces County, Texas, same lying in the East boundary line of Lot Y, Block 10, Corpus Christi Industrial District Section 2 as recorded in Volume 32, Page 113 of the Map Records of Nueces County, Texas;

THENCE, along the Southeast boundary line of said Lot 1, NORTH 45 degrees 10 minutes 48 seconds EAST 237.94 feet to a 5/8 inch iron rod found for a corner, same being the East corner of said Lot 1 and the South corner of Lot 2 of said Driscoll Industrial Tracts;

THENCE, along the Southeast boundary line of said Lot 2, NORTH 45 degrees 14 minutes 22 seconds EAST 150.09 feet to a 5/8 inch iron rod found for an interior corner of this tract, same being the East corner of said Lot 2;

THENCE, along the Northeast boundary line of said Lot 2, NORTH 44 degrees 54 minutes 48 seconds WEST 205.01 feet to a 5/8 inch iron rod set for the North Northwest corner of this tract, same being the North corner of said Lot 2, same lying in the Southeast right-of-way margin of Beacon Street;

THENCE, along said Southeast right-of-way margin of Beacon Street, NORTH 45 degrees 52 minutes 20 seconds EAST 164.78 feet to a one inch iron pipe found for the North corner of this tract, same being the point of curvature of a curve to the right;

THENCE, along said curve to the right with a radius of 20.00 feet, a central angle of 88 degrees 19 minutes 31 seconds, a tangent of 19.42 feet, a length of arc of 30.83 feet and a chord bearing and length of SOUTH 89 degrees 10 minutes 33 seconds EAST 27.87 feet to a one inch iron pipe found for the Northeast corner of this tract, same lying in the Southwest right-of-way margin of Baldwin Boulevard, same being the point of curvature of a curve to the left;

THENCE, along said Southwest right-of-way margin of Baldwin Boulevard and with said curve to the left with a radius of 1185.98 feet, a central angle of 09 degrees 15 minutes 59 seconds, a tangent of 96.11 feet, a length of arc of 191.81 feet and a chord bearing and length of SOUTH 51 degrees 37 minutes 39 seconds EAST 191.60 feet to a 5/8 inch iron rod set for a corner of this tract;

THENCE, continuing along said Southwest right-of-way margin of Baldwin Boulevard, SOUTH 56 degrees 15 minutes 09 seconds EAST 186.81 feet to a one inch iron pipe found for the East Northeast corner of this tract, same being an angle point in the right-of-way margin of said Baldwin Boulevard;

THENCE, continuing along said Southwest right-of-way margin of Baldwin Boulevard, SOUTH 30 degrees 18 minutes 59 seconds EAST 40.17 feet to a 5/8 inch iron rod set for an East corner of this tract, same point being the intersection of said Southwest right-of-way margin of Baldwin Boulevard with the West right-of-way margin of Airport Road;

Page 2        6.710 Acres of Lot D-2, Block 10   Job No.16-6318

THENCE, along said West right-of-way margin of Airport Road, SOUTH 00 degrees 48 minutes 28 seconds WEST 446.58 feet to a 5/8 inch iron rod found for the Southeast corner of this tract, same being the Northeast corner of Lot V, Block 10, Corpus Christi Industrial District Section 2 as recorded in Volume 35, Page2 of the Map Records of Nueces County, Texas;

THENCE, along the North boundary line of said Lot V, Block 10, NORTH 89 degrees 40 minutes 55 seconds WEST 596.02 feet to a 5/8 inch iron rod found for the Southwest corner of this tract, same being the Northwest corner of said Lot V, Block 10, same lying in the East boundary line of said Lot Y, Block 10;

THENCE, along said East boundary line of Lot Y, Block 10, NORTH 00 degrees 05 minutes 10 seconds WEST 167.71 feet to the point of beginning and containing 6.710 acres of land.

I hereby certify that this survey as reflected in the above Field Notes and attached plat conforms to the current Texas Surveyors Association Standards and Specifications for a Category IA, Condition II Land Survey.

Dated this the __29th__ day of __April_____, 2016.

Ronald A. Voss,
Registered Professional Land Surveyor No.2293

[Seal: RONALD A. VOSS 40539 LICENSED PROFESSIONAL ENGINEER STATE OF TEXAS]

1685/1013

Page 2 of 2

Doc# 2016029000

Doc# 2016029000
# Pages 15
07/14/2016   3:41PM
e-Filed & e-Recorded in the
Official Public Records of
NUECES COUNTY
KARA SANDS
COUNTY CLERK
Fees $67.00

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of Race, Color, Religion, Sex, Handicap, Familial Status or National Origin is invalid and unenforceable under FEDERAL LAW, 3/12/89

STATE OF TEXAS
COUNTY OF NUECES
I HEREBY CERTIFY THAT THIS INSTRUMENT WAS FILED IN FILE NUMBER SEQUENCE ON THE DATE AND AT THE TIME STAMPED HEREON BY ME AND WAS DULY RECORDED IN THE OFFICIAL PUBLIC RECORDS OF NUECES COUNTY TEXAS

*Kara Sands*
COUNTY CLERK
NUECES COUNTY, TEXAS

15

Doc# 2016029211

Doc# 2016029211
\# Pages 16
07/15/2016   2:03PM
e-Filed & e-Recorded in the
Official Public Records of
NUECES COUNTY
KARA SANDS
COUNTY CLERK
Fees $71.00

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of Race, Color, Religion, Sex, Handicap, Familial Status or National Origin is invalid and unenforceable under FEDERAL LAW, 3/12/89

STATE OF TEXAS
COUNTY OF NUECES
I HEREBY CERTIFY THAT THIS INSTRUMENT WAS FILED IN FILE NUMBER SEQUENCE ON THE DATE AND AT THE TIME STAMPED HEREON BY ME AND WAS DULY RECORDED IN THE OFFICIAL PUBLIC RECORDS OF NUECES COUNTY TEXAS



*Kara Sands*
COUNTY CLERK
NUECES COUNTY, TEXAS

16