IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PETES CHICKEN N MORE, INC. | § | CASE NO. 18-20350 |
| | § | |
| Debtor. | § | CHAPTER 11 |

---

## DISCLOSURE STATEMENT PROPOSED BY DEBTOR

---

ADELITA CAVADA LAW
10004 WURZBACH RD., #159
SAN ANTONIO, TEXAS 78230

ATTORNEY FOR PETES CHICKEN N
MORE, INC., DEBTOR AND
DEBTOR-IN-POSSESSION

DATED: JUNE 2, 2019

## TABLE OF CONTENTS

SUMMARY OF THE PLAN AND DISTRIBUTION TO CREDITORS. . . . . . . . . . . . . . . . . . . i

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.    Filing of the Debtor's Chapter 11 Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.    Purpose of Disclosure Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     C.    Hearing on Confirmation of the Plan of Reorganization. . . . . . . . . . . . . . . . . 2

     D.    Sources of Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    EXPLANATION OF CHAPTER 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.    Overview of Chapter 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.    Plan of Reorganization. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS. . . . . . . . . . . . 5

     A.    Ballots and Voting Deadline. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.    Claimants Entitled to Vote. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.    Bar Date for Filing Proofs of Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     D.    Definition of Impairment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     E.    Classes Impaired Under the Plan of Reorganization . . . . . . . . . . . . . . . . . . . 7

     F.    Vote Required for Class Acceptance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     G.    Information on Voting and Ballots. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           1.    Transmission of Ballots to Creditors. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           2.    Ballot Tabulation Procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     H.    Confirmation of Plan of Reorganization. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           1.    Solicitation of Acceptances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2.      Requirements for Confirmation of the
        Plan of Reorganization.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3.      Acceptances Necessary to Confirm the
        Plan of Reorganization.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4.      Cramdown. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.     BACKGROUND OF THE Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.      Nature of the Debtor's Business. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      Legal Structure and Ownership. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.      Assets and Liabilities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.      Selected Operational and Financial Data.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                1.      Historical Data. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                2.      Liquidation Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                3.      Summary and Class Analysis.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                4.      Statement of Projected Operations and Cash Flow. . . . . . . . . . . . . . . 12

                5.      List of All Claim Holders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                6.      Representations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        E.      Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                1.      Pre-Filing Proceedings.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                2.      Post-Petition Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                3.      Preference and Other Avoidance Litigation.. . . . . . . . . . . . . . . . . . . . 13

V.      EVENTS LEADING TO THE FILING OF THE PETITIONS FOR RELIEF. . . . . . . . . 13

        Reasons for Filing Chapter 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.     POST-PETITION OPERATIONS AND SIGNIFICANT EVENTS.. . . . . . . . . . . . . . . . 13

        A.      Post-Petition Operations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B.     Significant Orders Entered During the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      1.     Initial Activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      2.     The Official Unsecured Creditors Committee. . . . . . . . . . . . . . . . . . . . . 14

      3.     Adequate Protection Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      4.     Employee Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      5.     Applications to Retain Professionals. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.    DESCRIPTION OF THE PLAN OR REORGANIZATION. . . . . . . . . . . . . . . . . . . . . 14

    A.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    B.     Designation of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    C.     Estimated Size of Allowed Claims in Classes. . . . . . . . . . . . . . . . . . . . . . . . . 15

    D.     Treatment of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      1.     Treatment of Unclassified Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          (a)    Administrative Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          (b)    Fee Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          (c)    Allowance of Administrative Expenses. . . . . . . . . . . . . . . . . . . 16

          (d)    Pre Petition Priority Tax Claims. . . . . . . . . . . . . . . . . . . . . . . . 16

          (e)    Post Petition Priority Tax Claims. . . . . . . . . . . . . . . . . . . . . . . 17

      2.     Classification and Treatment of Claims. . . . . . . . . . . . . . . . . . . . . . . . . 17

          (a)    General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          (b)    Class 1 – Secured Claim Held by Nueces County
               against Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          (c)    Class 2 – General Unsecured Claims. . . . . . . . . . . . . . . . . . . . . 18

    E.     Means of Implementation of the Plan of Reorganization. . . . . . . . . . . . . . . . . 18

          1.      Powers and Duties of a Debtor-in-Possession. . . . . . . . . . . . . . . . . . . . . . 19

          2.      Distributable Cash. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          3.      Retention of Professionals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    F.      Provisions Governing Distribution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    G.     Contested and Contingent Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    H.     Executory Contracts and Leases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    I.      Maintenance of Causes of Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    J.      Discharge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    K.     Retention of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    L.      Amendments of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    M.    Termination of Committees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    N.     Management and Operation of Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VIII.    FEASIBILITY AND RISKS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    A.     Feasibility of Confirmation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    B.     Risks Associated with the Plan of Reorganization. . . . . . . . . . . . . . . . . . . . . . . . 21

IX.     ALTERNATIVES TO PLAN OF REORGANIZATION AND
           LIQUIDATION ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    A.     Dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.     Chapter 7 Liquidation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    C.     Alternative Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

X.      CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES
           OF THE PLAN OF REORGANIZATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    A.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.      Tax Consequences to the Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

C.      Tax Consequences to Creditors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XI.     SECURITIES CONSIDERATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XII.    DEFAULT PROVISIONS REGARDING IRS TAX CLAIMS. . . . . . . . . . . . . . . . . . . 24

XIII.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

APPENDIX OF EXHIBITS

Exhibit A – 2016 Tax Return

Exhibit B – Liquidation Analyses for the Debtor

Exhibit C – Summary of Treatment for All Classes

Exhibit D – Projected Income and Budget

Exhibit E – List of Claim Holders and Balances Owed

Exhibit F – Most Recent Monthly Operating Report

Exhibit G – Plan of Reorganization

SUMMARY OF THE PLAN AND DISTRIBUTION TO CREDITORS

The Bankruptcy Code (Bankruptcy Reform Act of 1978, Pub.L.No. 95-598, 92 Stat. 2633 (1978) (codified at 11 U.S.C. §§1101-1174 (Supp. III 1979)) and as may have been amended) dictates the priorities of payment that may be made to creditors under a chapter 11 Plan of Reorganization. At the top of the hierarchy are creditors with a security interest and liens on assets of a debtor, the secured creditors. A secured creditor is entitled to be paid the full amount of its claim pursuant to the terms of the Plan of Reorganization, so long as the collateral has sufficient value to pay the claim. If the collateral is not worth the full amount of the claim, the secured creditor is entitled to be paid part of its claim up to the value of the collateral with the balance being classed as an unsecured claim. If there are no "superpriority" claims, then creditors who provide credit to the chapter 11 debtors are the next group of creditors who share in the distributions from the plan. In most instances, these Administrative Expenses[1] are paid because the secured creditor permits and consents to certain amounts being made available from their collateral. Only upon these claims being paid in full are other creditors, including unsecured creditors, defined in this Plan as Priority Unsecured Claims or General Unsecured Claims, entitled to share in any distributions under a plan.

In this case PETES CHICKEN N MORE, INC. (the "Debtor"), owes property taxes and unsecured claims to various creditors.

The Plan proposes, starting on the Effective Date, for the Debtor to pay property taxes in full, and unsecured claims in full over seven years.

---

[1]     All capitalized terms will have the meaning defined in the Plan of Reorganization or, if not defined in the Plan of Reorganization, the Bankruptcy Code.

i

Frequently Asked Questions[2]:

<u>Who is the Debtor?</u> Petes Chicken N. More, Inc. (the "Debtor" or "Petes Chicken"). Petes Chicken is a Texas corporation. While at one time Petes Chicken owned and operated fried chicken restaurants in Corpus Christi, Texas, Petes Chicken currently owns two notes payable in connection with the sale of previously owned fried chicken restaurants.

<u>How Long Has the Debtor Been in Chapter 11?</u> The Debtor filed its petition for relief under chapter 11 of the Unites States Bankruptcy Code on August 8, 2019.

<u>Has a Trustee Been Appointed in This Chapter 11 Case?</u> Since the case was filed, no Trustee has been appointed. The Debtor has remained in possession of its property.

<u>What is the Debtor Attempting to Do in Chapter 11?</u> Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under chapter 11, the Debtor has been reorganizing its accounting and management methods to enable it to stabilize its cash flow for the benefit of all of its creditors. Formulation and confirmation of a Plan of Reorganization is the principal purpose of chapter 11. The Plan of Reorganization is the legal document which sets forth the means by which holders of claims against the Debtor will be treated. The Debtor is the entity(party) that will be the source of all funds to pay all claims.

<u>Has the Debtor Proposed a Plan of Reorganization?</u> Yes. Attached to this Disclosure Statement as an Exhibit is a copy of the Plan of Reorganization proposed by the Debtor.

<u>If the Plan of Reorganization Is the Document Which Governs How a Claim Will Be Treated, Why Am I Receiving This Disclosure Statement?</u> In order to confirm a Plan of Reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed Plan of Reorganization. But before a debtor can solicit such acceptances, the Court must approve the information to be sent to the creditors, along with the Plan of Reorganization, disclosing information to allow you to make an informed judgment about the Plan of Reorganization. The purpose of this Disclosure Statement is to provide that information required by the Bankruptcy Code.

<u>Has This Disclosure Statement Been Approved by the Bankruptcy Court?</u> In practice, the Bankruptcy Court requires that a proposed Disclosure Statement be distributed to all parties in interest who request copies to solicit objections and input in anticipation of the Bankruptcy Court's final review and approval. This Disclosure Statement is considered approved only after the Court is satisfied that it contains information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each class of creditors whose acceptance is being solicited to make an informed judgment whether to vote to accept or reject the Plan and *only* when it is accompanied with an Order Approving Disclosure Statement.

---

[2]    Answers in the "Frequently Asked Questions" section of this disclosure statement are the Debtor's representations and should not be interpreted as statements from the Bankruptcy Court. The Debtor believes these statements to be an accurate representation of the history of their case, and the Bankruptcy Code in general.

**THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH IS ATTACHED HERETO, SHOULD BE READ IN ITS ENTIRETY. FOR THE CONVENIENCE OF CREDITORS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.**

<u>How Do I Determine Which Class I Am In?</u> To determine the class of your claim or interest, you determine the nature of the claim against the Debtor (i.e., unsecured, secured); then, turn to the Table of Contents, which will direct you to the discussion of the Plan and to the treatment provided to the class in which you are grouped. The pertinent section of the Disclosure Statement dealing with that class will explain, among other things, who is in that class, what is the size of the class, and what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Paragraph VII C lists all classes of claimants and their types of claims.

<u>Why Is Confirmation of a Plan of Reorganization Important?</u> Confirmation of a Plan of Reorganization is necessary for a debtor in Chapter 11 to provide the court-approved treatment to its creditors under its plan. Unless the Plan of Reorganization is confirmed, the debtor is legally prohibited from providing you what it has proposed in its Plan of Reorganization.

<u>What Is Necessary to Confirm a Plan of Reorganization?</u> Confirmation of a plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. (If the vote is insufficient, the Court can still confirm the Plan, but only upon being provided additional proof regarding the ultimate fairness of the Plan to the creditors.)

<u>Am I Entitled to Vote on the Plan?</u> Any creditor of the Debtor whose claim is Impaired under the Plan is entitled to vote, if either (i) your claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) you have filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon motion by you or your counsel. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

<u>How Do I Determine Whether I Am in an Impaired Class?</u> The Plan in Article 11 and the Disclosure Statement in Section III E identifies the classes of creditors whose claims are impaired. In the event you have a question regarding whether you are in an impaired class, you should assume your claim is impaired and vote. If your claim is impaired, your vote will be considered by the Court.

<u>When Is the Deadline by Which I Need to Return My Ballot?</u> The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the

respective Plan must be received by the Debtor no later than the date indicated in the Order Approving Disclosure Statement. Ballots should be mailed to the following address:

> Adelita Cavada Law
> 10004 Wurzbach Rd., #159
> San Antonio, Texas 78230

<u>How Do I Determine When and How Much I Will Be Paid?</u> In the "Exhibits," to this Disclosure Statement, the Debtor has provided both written and financial summaries of what each class of creditors will receive under the Plan, cramdown of Plan and the liquidation of the Debtor in a chapter 7. The written summaries provide a short summary of what each class will receive.

> **PLEASE REMEMBER THE DESCRIPTION OF THE PLAN IN THE SUMMARY IS A BRIEF SUMMARY ONLY AND CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE PAGES OF THE DISCLOSURE STATEMENT REFERENCED IN THE WRITTEN SUMMARY AND THE PLAN ATTACHED AS AN EXHIBIT TO THIS DISCLOSURE STATEMENT.**

<u>Why Do the Debtor Support the Plan of Reorganization?</u> If converted to a chapter 7, only certain secured creditors would receive payments from a liquidation of Debtor's assets. The rest of the creditors holding priority and general unsecured claims would likely receive nothing.

The Debtor urges you to study the Plan of Reorganization and the Disclosure Statement. We recommend that all classes VOTE in FAVOR of the Plan.

I.

INTRODUCTION

Petes Chicken N More, Inc., (hereinafter "Debtor" or "Petes Chicken"), the Debtor and Debtor-in-Possession in the above-referenced petition for relief, submits this Disclosure Statement pursuant to Bankruptcy Code section 1125 for use in the solicitation of votes on the Plan.

This Disclosure Statement sets forth certain relevant information regarding the Debtor's pre-petition operations and financial history, the need to seek chapter 11 protection, significant events that have occurred during the chapter 11 cases, and the anticipated procedures for operating the post-confirmation Debtor. This Disclosure Statement also describes terms and provisions of the Plan, including certain alternatives, certain effects of confirmation, certain risk factors, and the manner in which distributions will be made. Additionally, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims must follow for their votes to be counted.

A.      Filing of the Debtor's Chapter 11 Case

The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (Bankruptcy Reform Act of 1978, Pub.L.No. 95-598, 92 Stat. 2633 (1978) (codified at 11 U.S.C. §§1101-1174 (Supp. III 1979)) on August 6, 2019 (the "Petition Date"), in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy Court"). Since the petition for relief was filed, Petes Chicken has continued to manage its business and assets as Debtor-in-Possession pursuant to Bankruptcy Code sections 1107 and 1108.

B.      Purpose of Disclosure Statement

This Disclosure Statement is submitted in accordance with Bankruptcy Code section 1125 for the purpose of soliciting acceptances of the Plan from holders of certain Classes of Claims. The only Claimants whose acceptances of the Plan are sought are those whose Claims are "impaired" (as that term is defined in Bankruptcy Code section 1124) by the Plan and who are receiving distributions under the Plan. Holders of Claims that are not receiving or retaining any property under the Plan are deemed to have rejected the Plan.

The Debtor has prepared this Disclosure Statement pursuant to Bankruptcy Code section 1125, which requires that a copy of a plan, or a summary thereof, be submitted to all holders of Claims against the Debtor, along with a written disclosure statement containing adequate information about the Debtor of a kind, and in sufficient detail, as far as is reasonably practicable, that would enable a hypothetical, reasonable investor typical of Claimants to make an informed judgment in exercising their right to vote on a plan. A copy of the Plan is included with the materials sent along with this Disclosure Statement.

This Disclosure Statement ultimately must be approved by the Bankruptcy Court, which is indicated *only* if this Disclosure Statement is accompanied by an Order Approving Disclosure

Statement. Such approval is required by the Bankruptcy Code, and does not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereunder. Such approval, which would be indicated *only* if this Disclosure Statement is accompanied by an Order Approving Disclosure Statement, does indicate, however, that the Bankruptcy Court has determined that the Disclosure Statement meets the requirements of Bankruptcy Code section 1125 and contains adequate information to permit the Claimants whose acceptance of the Plan is solicited, to make an informed judgment regarding acceptance or rejection of the Plan.

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THE MATERIAL CONTAINED HEREIN IS INTENDED SOLELY FOR THE USE OF CREDITORS OF THE DEBTOR IN EVALUATING THE PLAN AND VOTING TO ACCEPT OR REJECT THE PLAN AND, ACCORDINGLY, MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN THE DETERMINATION OF HOW TO VOTE ON, OR WHETHER TO OBJECT TO, THE PLAN. THE DEBTOR'S REORGANIZATION PURSUANT TO THE PLAN IS SUBJECT TO NUMEROUS CONDITIONS AND VARIABLES, AND THERE CAN BE NO ABSOLUTE ASSURANCE THAT THE PLAN, AS CONTEMPLATED, WILL BE EFFECTUATED.**

**THE DEBTOR BELIEVES THAT THE PLAN AND THE TREATMENT OF CLAIMS THEREUNDER IS IN THE BEST INTERESTS OF CLAIMANTS, AND URGE THAT YOU VOTE TO ACCEPT THE PLAN.**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.**

C.    Hearing on Confirmation of the Plan

The Bankruptcy Court sets the hearing (the "Confirmation Hearing") in its Order Approving Disclosure Statement to determine whether the Plan has been accepted by the requisite number of Claimants and whether the other requirements for confirmation of the Plan have been satisfied. Only after the Court has approved the Disclosure Statement as having adequate information will holders of Claims against the Debtor have a right to vote on the Plan. Ballots must be delivered by the date indicated in the Order Approving Disclosure Statement to the Adeltia Cavada Law, 10004 Wurzbach Rd., #159, San Antonio, Texas 78230. If the Plan is rejected by one or more impaired Classes of Claims, the Bankruptcy Court may still confirm the Plan, or a modification thereof under Bankruptcy Code section 1129(b) (commonly referred to as a "cramdown") if it determines, among other things, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting

Class or Classes of Claims impaired under the Plan. The procedures and requirements for voting on the Plan are described in more detail below.

D.      Sources of Information

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, its business, properties and management and the Plan have been prepared from information furnished by the Debtor.

Certain parts of the materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents. While the Debtor has made every effort to retain the meaning of such other documents or portions that have been summarized, they urge that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of such document shall govern and apply.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement.

No statements concerning the Debtor, the value of its property, or the value of any benefit offered to the holder of a Claim in connection with the Plan should be relied on other than as set forth in this Disclosure Statement. In arriving at a decision, parties should not rely on any representation or inducement made to secure their acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be immediately reported to counsel for the Debtor, Adeltia Cavada Law, 10004 Wurzbach Rd., #159, San Antonio, Texas 78230 (Telephone: 210.288.3263).

II.

EXPLANATION OF CHAPTER 11

A.      Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor-in-possession attempts to reorganize its business and financial affairs for the benefit of the debtor, its creditors, and other interested parties.

The commencement of a chapter 11 case creates an estate comprising all of the Debtor's legal and equitable interests in property as of the date the petition is filed. Unless the Bankruptcy Court orders the appointment of a trustee, Bankruptcy Code sections 1101, 1107 and 1108 provide that chapter 11 debtor may continue to operate its business and control the assets of its estate as "debtor-in-possession," as the Debtor has done in this case since the Petition Date.

The filing of a chapter 11 petition also triggers the automatic stay, under Bankruptcy Code section 362. The automatic stay halts essentially all attempts to collect pre-petition claims from the Debtor or to otherwise interfere with the Debtor's business or its estates.

Formulation of a Plan of Reorganization is the principal purpose of a chapter 11 case. A Plan of Reorganization sets forth the means for satisfying the claims of creditors against, and interests and security holders in, the debtors. Unless a trustee is appointed, only the debtors may file a plan during the first 120 days of a chapter 11 case (the "Exclusive Period"), or any extension of said Exclusive Period approved by the Court. After the Exclusive Period has expired, a creditor or any other interested party may file a plan, unless the debtors file a plan within the Exclusive Period. If the debtors file a plan within the Exclusive Period, the debtors are given sixty (60) additional days (the "Solicitation Period") to solicit acceptances of its plan. Bankruptcy Code section 1121(d) permits the Bankruptcy Court to extend or reduce the Exclusive Period and the Solicitation Period upon a showing of adequate "cause."

B.      Plan of Reorganization

After the Plan has been filed, the holders of claims against, or interests in, the Debtor are permitted to vote on whether to accept or reject the plan. Chapter 11 does not require that each holder of a claim against, or interest in, the Debtor vote in favor of a plan in order for the plan to be confirmed. At a minimum, however, a plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting from at least one class of claims impaired under the Plan.

Classes of claims or interests that are not "impaired" under a Plan of Reorganization are conclusively presumed to have accepted the plan, and therefore are not entitled to vote. A class is "impaired" if the plan modifies the legal, equitable, or contractual rights attaching to the claims or interests of that class. Modification for purposes of impairment does not include curing defaults and reinstating maturity or payment in full in cash. Classes of claims or interests that receive or retain no property under a Plan of Reorganization are conclusively presumed to have rejected the plan, and therefore are not entitled to vote.

Even if all classes of claims and interests accept a Plan of Reorganization or liquidation, the Bankruptcy Court may nonetheless still deny confirmation. Bankruptcy Code section 1129 sets forth the requirements for confirmation and, among other things, requires that a plan be in the "best interests" of impaired and dissenting creditors and interest holders and that the plan be feasible. The "best interests" test generally requires that the value of the consideration to be distributed to impaired and dissenting creditors and interest holders under a plan may not be less than those parties would receive if the Debtor were liquidated under a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code.

The Bankruptcy Court may confirm a Plan of Reorganization or liquidation even though fewer than all of the classes of impaired claims and interests accept it. The Court may do so under the "cramdown" provisions of Bankruptcy Code section 1129(b). In order for a plan to be confirmed

under the cramdown provisions, despite the rejection of a class of impaired claims or interests, the proponent of the plan must show, among other things, that the plan does not discriminate unfairly and that it is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

The Bankruptcy Court must further find that the economic terms of the particular plan meet the specific requirements of Bankruptcy Code section 1129(b) with respect to the subject objecting class. If the proponent of the plan proposes to seek confirmation of the plan under the provisions of Bankruptcy Code section 1129(b), the proponent must also meet all applicable requirements of Bankruptcy Code section 1129(a) (except section 1129(a)(8)). Those requirements include the requirements that (i) the plan comply with applicable Bankruptcy Code provisions and other applicable law, (ii) that the plan be proposed in good faith, and (iii) that at least one impaired class of creditors or interest holders has voted to accept the plan.

III.

VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS

A.      Ballots and Voting Deadline

A ballot for voting to accept or reject the Plan is enclosed with a Disclosure Statement only *after* the Disclosure Statement has been approved by the Court, and has been mailed to Claimants (or their authorized representative) entitled to vote. After carefully reviewing the Disclosure Statement, including all exhibits, each Claimant (or its authorized representative) entitled to vote should indicate its vote on the ballot that has been or will be provided. All Claimants and Equity Interest Holders (or their authorized representative) entitled to vote must (i) carefully review the ballot and instructions thereon, (ii) execute the ballot, and (iii) return it to the address indicated on the ballot by the deadline (the "Voting Deadline") for the ballot to be considered.

The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than the date indicated on the Order Approving Disclosure Statement, at the following address:

> Adelita Cavada Law
> 10004 Wurzbach Rd., #159
> San Antonio, Texas 78230

**BALLOTS MUST BE RECEIVED AT THE ABOVE ADDRESS NO LATER THAN THE DATE INDICATED ON THE ORDER APPROVING DISCLOSURE STATEMENT. ANY BALLOTS RECEIVED AFTER THAT DEADLINE WILL NOT BE COUNTED.**

B.      Claimants Entitled to Vote

Any Claimant of the Debtor whose Claim is impaired under the Plan is entitled to vote if either (i) the Debtor has scheduled the Claimant's Claim (and such Claim is not scheduled as disputed, contingent, or unliquidated) or (ii) the Claimant has filed a proof of Claim on or before the deadline set by the Bankruptcy Court for such filings. Any holder of a Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court (on motion by a party whose Claim is subject to an objection), temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Such motion must be heard and determined by the Bankruptcy Court before the first date set by the Bankruptcy Court for the Confirmation Hearing of the Plan. In addition, a Claimant's vote may be disregarded if the Bankruptcy Court determines that the Claimant's acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code.

C.      Bar Date for Filing Proofs of Claim

The Bankruptcy Court will have established a bar date for filing proofs of Claim in this chapter 11 case, which is indicated on the Order Approving Disclosure Statement.

D.      Definition of Impairment

Under Bankruptcy Code section 1124, a class of Claims is impaired under a Plan of Reorganization unless, with respect to each Claim of such class, the plan:

1.      leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim;

2.      notwithstanding any contractual provision or applicable law that entitles the holder of a Claim to receive accelerated payment of his Claim after the occurrence of a default;

3.      cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Bankruptcy Code section 365(b)(2);

4.      reinstates the maturity of such Claim as it existed before the default;

5.      compensates the holder of such Claim for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

6.      does not otherwise alter the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim.

E.      Classes Impaired Under the Plan

Classes 1 and 2 are impaired under the Plan. Therefore, all holders of those claims in classes 1 and 2, subject to the limitations set forth above, are eligible to vote to accept or reject the Plan.

F.      Vote Required for Class Acceptance

The Bankruptcy Code defines acceptance of a Plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan; that is, acceptance takes place only if creditors holding claims at least two-thirds in amount of the total amount of claims and more than one-half in number of the creditors actually voting cast their ballots in favor of acceptance.

G.      Information on Voting and Ballots

        1.      Transmission of Ballots to Creditors and Equity Interest Holders

Except as otherwise provided in the Order (I) Approving Disclosure Statement Proposed by Debtor; (II) Establishing Time For Filing Acceptances or Rejections of Plan; and (III) Establishing Objection Deadlines, entered on by the Court, ballots are ordinarily forwarded to all Claimants. Under Bankruptcy Code section 1126(g), Claimants who do not either receive or retain any property under the Plan are deemed to have rejected the Plan. In the event a Claimant does not vote, the Bankruptcy Court may deem such Claimant to have accepted the Plan.

        2.      Ballot Tabulation Procedures

For purposes of voting on the Plan, the amount and classification of a Claim and the procedures that will be used to tabulate acceptances and rejections of the Plan shall be exclusively as follows:

        (a)     If no proof of Claim has been timely filed, the voted amount of a Claim shall be equal to the amount listed for the particular Claim in the Schedules of Assets and Liabilities, as and if amended, to the extent such Claim is not listed as contingent, unliquidated, or disputed, and the Claim shall be placed in the appropriate Class, based on the Debtor's records, and consistent with the Schedules of Assets and Liabilities, the Claims registry of the Clerk of the Bankruptcy Court (the "Clerk");

        (b)     If a proof of Claim has been timely filed, and has not been objected to before the expiration of the Voting Deadline, the voted amount of that Claim shall be as specified in the proof of Claim filed with the Clerk;

       (c)     a Claim that is the subject of an objection filed before the Voting Deadline shall be disallowed for voting purposes, except to the extent that the Court orders otherwise.

H.     Confirmation of Plan

     1.     Solicitation of Acceptances

The Debtor is soliciting your vote. The Debtor will bear the cost of any solicitation. No other additional compensation shall be received by any party for any solicitation other than as disclosed to the Bankruptcy Court.

**NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION ON HOW TO VOTE, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.**

**THIS IS A SOLICITATION SOLELY BY THE DEBTOR, AND IS NOT A SOLICITATION BY ANY ATTORNEY OR ACCOUNTANT FOR THE DEBTOR. THE REPRESENTATIONS, IF ANY, MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF SUCH ATTORNEYS OR ACCOUNTANTS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.**

Under the Bankruptcy Code, a vote for acceptance or rejection of a Plan may not be solicited unless the claimant has received a copy of a Disclosure Statement approved by the Bankruptcy Court prior to, or concurrently with, such solicitation. This solicitation of votes on the Plan is governed by Bankruptcy Code section 1125(b). Violation of Bankruptcy Code section 1125(b) may result in sanctions by the Bankruptcy Court, including disallowance of any improperly solicited vote.

     2.     Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code section 1129 have been satisfied, in which event the Bankruptcy Court shall enter an Order confirming the Plan. For the Plan to be confirmed, Bankruptcy Code section 1129 requires that:

       (a)     the Plan complies with the applicable provisions of the Bankruptcy Code;

(b)     the Debtor has complied with the applicable provisions of the Bankruptcy Code;

(c)     the Plan has been proposed in good faith and not by any means forbidden by law;

(d)     any payment or distribution made or promised by the Debtor or by a person acquiring property under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)     the Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, if any, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of Creditors and with public policy; and the Debtor has disclosed the identity of any insider who will be employed or retained by the reorganized Debtor and the nature of any compensation for such insider;

(f)     any government regulatory commission with jurisdiction (after confirmation of the Plan) over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

(g)     with respect to each impaired Class of Claims, either each holder of a Claim of the Class has accepted the Plan, or will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code. If Bankruptcy Code section 1111(b)(2) applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor's interest in the property that secures that Claim;

(h)     each Class of Claims has either accepted the Plan or is not impaired under the Plan;

(i)     except to the extent that the holder of a particular Administrative Claim or Priority Claim has agreed to a different treatment of its Claim, the Plan

provides that Administrative and Priority Claims shall be paid in full within the time limitations provided for under the Code;

(j)     if a Class of Claim is impaired under the Plan, at least one such Class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of that Class; and

(k)     confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believe that the Plan satisfies all of the statutory requirements of the Bankruptcy Code for confirmation and that the Plan is proposed in good faith. The Debtor believe they have complied, or will have complied, with all the requirements of the Bankruptcy Code governing confirmation of the Plan.

3.     Acceptances Necessary to Confirm a Plan

Voting on a Plan by each holder of a Claim (or its authorized representative) is important. Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim vote in favor of a Plan in order for the Court to confirm a Plan. Generally, to be confirmed under the acceptance provisions of Bankruptcy Code section 1126(a), a Plan must be accepted by each Class of Claims that is impaired under a Plan by parties holding at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with a Plan. Even if all Classes of Claims accept a Plan, the Bankruptcy Court may refuse to confirm a Plan after which the Debtor is either compelled to present another plan or convert its case to one under chapter 7 of the Bankruptcy Code.

4.     Cramdown

In the event that any impaired Class of Claims does not accept a Plan, the Bankruptcy Court may still confirm a Plan at the request of the Debtor if, as to each impaired Class that has not accepted a Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A Plan of Reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its Claims. "Fair and equitable" has different meanings for holders of secured and unsecured Claims.

With respect to a secured Claim, "fair and equitable" means either (i) the impaired secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the effective date of the Plan at least equal to the value of such creditor's interest in the property securing its liens, (ii) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses

(i) and (iii) hereof; or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its Claim under the Plan.

With respect to an unsecured Claim, "fair and equitable" means either (i) each impaired creditor receives or retains property of a value equal to the amount of its Allowed Claim or (ii) the holders of Claims that are junior to the Claims of the dissenting Class will not receive any property under the Plan.

In the event at least one Class of impaired Claims rejects or is deemed to have rejected the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims.

The Debtor believes that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired Class of Claims and is confirmable. Article 8 of the Plan constitutes the Debtor's request, pursuant to Bankruptcy Code section 1129(b)(l), that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) may not be met and its intent to pursue a cramdown if necessary to confirm the Plan.

IV.

BACKGROUND OF THE DEBTOR

A.      Nature of the Debtor's Past and Present Business

Petes Chicken is a Texas Corporation operating in Corpus Christi, Texas. At one time, Petes Chicken owned and operated several fast food fried chicken restaurants in Corpus Christi, Texas. Several years ago, Debtor made the decision to sell its interest in the restaurants. Today, Petes Chicken owns two notes which comprise the majority of its assets.

B.      Legal Structure and Ownership

Debtor operates as a Texas corporation.

C.      Assets and Liabilities

In the Schedules of Assets and Liabilities filed in this case, the Debtor lists assets having an approximate, aggregate fair market value of $1,409,550.00 as of the Petition Date,[3] which are listed in the Liquidation Analysis which is attached hereto as Exhibit B. Since the Petition date, the single piece of real property, with a scheduled value of $1,000,050.00, has been foreclosed on and is no longer an asset in the case.

---

[3]For a complete listing and explanation of the Debtor's assets as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities filed with the Clerk and made a part of the public record.

In the Schedules of Assets and Liabilities, the Debtor lists liabilities of approximately $1,118,300.00.

The Debtor's liabilities essentially consist of secured debt which was owed on the real property which was foreclosed on, property taxes, and unsecured trade debt.

A comprehensive, detailed list of all liabilities against the Debtor is provided in Exhibit F.

D.     Selected Operating and Financial Data.

1.     Historical Data

Attached as Exhibit A is Debtor's 2016 Income Tax Return.

2.     Liquidation Analysis

Attached as Exhibit B is the Debtor's estimate of what its assets would generate in a hypothetical chapter 7 liquidation. Creditors should notice that Debtor owns no assets that are not encumbered. Debtor estimated that it has no equity in its personalty and that unsecured creditors would not received a payment in a hypothetical liquidation.

3.     Summary and Class Analysis

Attached as Exhibit C is a complete analyses of all classes and a summary of their projected payout schedules.

4.     Projected Income and Budget

Attached as Exhibit D is the Projected Income and Budget for the Debtor through 2018.

5.     List of Claim Holders

Attached as Exhibit E is an edited list of all claim holders and the Debtor's best estimates on the amount of each claim.

6.     Representations

The referenced financial information represents the best estimates of the Debtor as to the items set forth therein and are believed by it to be based on assumptions that are reasonable.

**THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED FOR PURPOSES OF INCLUSION HEREIN. THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY UPON BOOKKEEPING PERFORMED INTERNALLY. THE DEBTOR HAS**

**CONSULTED WITH APPRAISERS AND ACCOUNTANTS REGARDING THE PREPARATION OF THE FINANCIAL INFORMATION. HOWEVER, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.**

E.     Litigation

     1.     Pre-Filing Proceedings

There was no significant pre-filing litigation involving the Debtor aside from the lawsuits filed prepetition concerning debts listed in Debtor's schedules. Debtor has disclosed all lawsuits as part of its Statement of Financial Affairs filed in this case.

     2.     Post Petition Proceedings

The property located at 4101 Baldwin, Corpus Christi, Texas was sold pursuant to a foreclosure sale on or about April 2, 2019. This property is no longer an asset of the estate.

     3.     Preferences and Other Avoidance Litigation

The Debtor has no avoidance or preference actions.

V.

EVENTS LEADING TO THE FILING OF THE PETITIONS FOR RELIEF

Reasons for Filing Chapter 11

Debtor filed its petition for relief to protect the property located at 4101 Baldwin, Corpus Christi, Texas, from foreclosure. Debtor hoped to be able to reorganize its debts pursuant to a chapter 11 bankruptcy plan.

VI.

POST-PETITION OPERATIONS AND SIGNIFICANT EVENTS

A.     Post-Petition Operations

Since filing its petition, Debtor has continued to collect on its notes receivable in the regular course of business. Aside from the notes receivable, Debtor has no other business operations.

B.      Significant Orders Entered During the Case

      1.      Initial Activity

The Debtor has had a limited number of significant events since the petitions were filed.

      2.      The Official Unsecured Creditors Committee

The Office of the United States Trustee has determined that no Official Unsecured Creditors Committee (the "Committee") will be appointed in this chapter 11 cases.

      3.      Adequate Protection Issues

No adequate protections issues have arisen in this case.

      4.      Employee Actions

The Debtor currently anticipates no employee actions.

      5.      Application to Retain Professionals

The Debtor has elected to retain the undersigned counsel as its attorney.

VII.

DESCRIPTION OF THE PLAN

A.      Introduction

The Plan proposes, starting on the Effective Date, for the Debtor to pay secured claims in full or the value of their claim. Debtor will pay 100% of the general unsecured claims in Class 2 over seven years.

A summary of the principle provisions of the Plan and the treatment of Classes of Allowed Claims is set out below. The summary is entirely qualified by the Plan. This Disclosure Statement is only a summary of the terms of the Plan; it is the Plan and not the Disclosure Statement that governs the rights and obligations of the parties.

As described in Paragraph II B and III H 4 above, Bankruptcy law provides that a plan be confirmed under the "cramdown" provisions of the Bankruptcy Code over the objection of certain classes of creditors. In practice, if a particular class votes against a plan that proposes to pay the members of that class less than their claims in full, that class ordinarily can invoke the absolute priority rule, which requires the proponent of a plan to pay the objecting class in full before any class subordinate to that class can participate in any distributions from the plan. Notwithstanding the

protection that rule ordinarily provides to all classes of creditors, if a proponent proposes to pay all classes of creditors at least as much as they would receive in hypothetical liquidation, *and* the proponent offers "new value" to the estate, the Debtor may be permitted to retain certain value.

B.      Designation of Claims

**THE AMOUNTS OF CLAIMS IN THE VARIOUS CLASSES AND THE NUMBER OF HOLDERS OF SUCH CLAIMS CANNOT NOW BE EXACTLY DETERMINED. WHILE THE DEBTOR HAS REFLECTED IN THE SCHEDULES, AS THEY MAY BE AMENDED PRIOR TO VOTING ON THE PLAN, THE DEBT AND CLAIMANTS KNOWN TO IT OR REFLECTED ON ITS BOOKS, INFORMATION CONCERNING ALL CLAIMS ASSERTED COULD NOT BE COMPILED IN TIME FOR INCLUSION HEREIN. THEREFORE, THE AMOUNT OF CLAIMS IN THE VARIOUS CLASSES AND THE NUMBER OF HOLDERS OF SUCH CLAIMS SET FORTH HEREIN ARE ESTIMATES. HOWEVER, THE DEBTOR BELIEVES THE ESTIMATES TO BE REASONABLE.**

The following is a designation of the Classes of Claims for the Debtor under the Plan. In accordance with Bankruptcy Code section 1123(a)(l), Administrative Expenses, and Fee Claims have not been classified and are excluded from the following Classes. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. A Claim is classified in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim which is not an Allowed Claim is not in any Class. Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim that is not an Allowed Claim.

Class 1 – Secured Claim Held by Nueces County

Class 2 – General Unsecured Claims

C.      Estimated Size of Allowed Claims in Classes

| Class | Size | Impaired | Amount |
|-------|------|----------|--------|
| 1 | 1 | Yes | $6,132.99 |
| 2 | 5 | Yes | $119,263.11 |

D.      Treatment of Claims

1.      Treatment of Unclassified Claims

      (a)     Administrative Expenses and Fee Claims

Administrative Expenses are Claims for any cost or expense of the chapter 11 case allowable under Bankruptcy Code sections 503(b) and 507(a)(1). Those expenses include all actual and necessary costs and expenses related to the preservation of the Debtor's estate or the operation of the Debtor's business, all claims to cure payments arising from the assumption of executory contracts and unexpired leases under Bankruptcy Code section 365, and all United States Trustee quarterly fees. Under the Plan, all Administrative Expenses shall be treated as follows:

The holder of any Administrative Expense other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Expense, must file with the Bankruptcy Court and serve on the Debtor and the Office of the United States Trustee and their respective counsel, notice of such Administrative Expense within thirty days after the Effective Date.

      (b)     Fee Claims

Each Person asserting a Fee Claim for services rendered or expenses incurred before the Effective Date shall file with the Bankruptcy Court, and served on the U. S. Trustee, the Debtor and its counsel, a Fee Application within forty-five days after the Effective Date.

      (c)     Allowance of Administrative Expenses

An Administrative Expense with respect to which notice has been properly filed and served pursuant to the Plan shall become an Allowed Administrative Expense if no objection is filed within thirty days after the filing and service of notice of such Administrative Expense, subject to an independent judgment by the Court that the Administrative Expense should be allowed, even if no objection is filed.. If an objection is timely filed, the Administrative Expense shall become an Allowed Administrative Expense only to the extent allowed by Final Order. An Administrative Expense that is a Fee Claim, and with respect to which a Fee Application has been timely filed pursuant to Article 4 of the Plan, shall become an Allowed Administrative Expense only to the extent allowed by Final Order.

Each holder of an Allowed Claim for an Administrative Expense shall receive from the Debtor the amount of such holder's Allowed Claim in cash on the Effective Date.

Professional fees for attorneys and accountants are estimated to be $5,500.00.

      (d)     Pre Petition Unsecured Priority Tax Claims

Unsecured priority tax claims under 11 U.S.C § 507(a)(8) are not required to be placed in a class. Such claims are unclassified. The Debtor has one Pre Petition Unsecured Priority Tax claim

for unpaid taxes owed to the Internal Revenue Service. The Debtor proposes to pay the claim in full as follows:

Depending on the quarter certain tax liabilities were assessed, the various claims by quarter will be paid over periods not to exceed five years from the date of assessment. Interest will be paid at 3% per annum. All payments will begin on the Effective Date.

(e)      Post Petition Priority Tax Claims

The Debtor does not anticipate having any Post Petition Priority Tax Claims after the Effective Date; to the extent there is such a claim it will be treated as follows:

Each holder of an Allowed Priority Tax Claim shall receive (i) the amount of such holder's Allowed Claim in one cash payment on the Effective Date; (ii) such other treatment to which the holder of such Allowed Priority Tax Claim and the Debtor may agree in writing; or (iii) in accordance with Bankruptcy Code section 1129(a)(9)(C).

2.      Classification and Treatment of Claims

(a)      General

The claims set forth for each Class are based on information known to the Debtor as of the filing date of this Disclosure Statement.

The Plan provides that the Debtor will continue to operate its business in the ordinary course of business and use the profits to fund the Plan.

(b)      Class 1 – Secured Claim Held by Mercantil Bank

Class 1 is comprised of the secured claim for ad valorem taxes held by Nueces County. Debtor proposes to pay said claim as follows:

Notwithstanding anything to the contrary contained within the Plan or approved Disclosure Statement, the Secured Tax Claim owing to Nueces County shall be paid by the Debtor, pursuant to the provisions of 11 USC §1129 (a) (9) (C), in equal monthly installments, paid over a period not exceeding 60 months from the file date (August 6, 2018). The Claims shall bear interest at the statutory rate of 12% per annum from the dateof filing of this case until said taxes are paid in full.

The 2019 and future ad valorem taxes owed to the Taxing Jurisdictions shall be paid in the ordinary course of business as they come due and Taxing Jurisdictions shall not be required to file a request for allowance and payment of its claim.

Taxing Jurisdictions shall retain all liens until such taxes are paid in full.

In the event that any part of the retained property is sold during the term of the Plan, the unpaid taxes secured by said property shall be paid in full upon the sale of the property. If any property which secures the ad valorem tax claims is foreclosed by any lienholder, Taxing Jurisdictions shall be free to pursue its state law remedies for collection of all amounts due under the Texas Property Tax Code.

Default shall occur if one monthly installment due to Taxing Jurisdictions under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including 2012 taxes) are not paid timely pursuant to state law. In the event of default the Taxing Jurisdictions shall send written notice of default to Debtor's attorney and Debtor. If the default is not cured within twenty (20) days after notice of the default is mailed, the Taxing Jurisdictions may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. The Debtor has the opportunity to cure two (2) times over the life of the Plan.  In the event of a third default, the Taxing Jurisdictions may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.

Notwithstanding any injunctions in the Plan or the Disclosure Statement to the contrary, the Reorganized Debtor shall timely pay to the Taxing Jurisdictions all post- petition taxes on all property retained by Debtor and the Taxing Jurisdictions may pursue any and all collection remedies as allowed by law with respect to said post-petition taxes and shall not be required to seek any relief from this Bankruptcy Court in the event Debtor or the Reorganized Debtor shall fail to timely pay said taxes.

The holder of the Class 1 claim is impaired and is eligible to vote on the plan.

(c)     Class 2 - Claims Held by General Unsecured Creditors

Class 2 is comprised of general unsecured claims held by 5 creditors for business debt. Debtor proposes to pay said claims as follows:

Claims totaling approximately $118,000.00 will be paid 100% of their claims over a period of seven years at a rate of 4.00% interest per annum. Regular monthly payments of approximately $1,612.00, beginning on the effective date, will be distributed on a pro-rata basis to the various creditors holding unsecured claims.

The holders of the Class 2 claims are impaired and are eligible to vote on the Plan.

E.     Means of Implementation of the Plan

Beginning on the Effective Date, the Debtor will allocate sufficient funds from its profits to make the distributions required under the Plan.

1.      Powers and Duties of the Reorganized, Post-Confirmation Debtor

Subject to the provisions of the Plan, the reorganized, post-confirmation Debtor will take possession of the Assets and will conserve, protect all Assets and all other property which may be acquired by the Debtor and continue to operate in the manner outlined above. The reorganized, post-confirmation Debtor will have the sole right, power and discretion to manage the affairs of the Debtor, to enter into contracts or agreements binding the Debtor and to execute instruments necessary in connection with the performance of its duties. The reorganized, post-confirmation Debtor will be the successor to the pre-petition Debtor's Estates pursuant to Code section 1123(b)(3) and will have the power to prosecute any claims of the Debtor's Estates that the Debtor in good faith believe to be valid. Additionally, the reorganized, post-confirmation Debtor will have power to do all acts contemplated by the Plan and other acts that may be necessary or appropriate for the operation of its business activity in the ordinary course of business.

2.      Distributable Cash

The Debtor has no income other than from the operation of its business.

3.      Retention of Professionals

The reorganized, post-confirmation Debtor may retain Professionals to effectively administer the estate on terms approved by the Bankruptcy Court.

F.      Provisions Governing Distribution

Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made according the terms provided for in the Plan, or as may be ordered by the Bankruptcy Court.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed; or if the Debtor has been notified of a change of address, at the address set forth in such notice. All claims for undeliverable distributions shall be made on or before the second anniversary of the Initial Distribution Date. After such date, all Unclaimed Property shall revert to the estate for distribution of an additional Pro Rata Share to all classes on a pro rata basis, and the Claim of any other holder with respect to such Unclaimed Property shall be discharged and forever barred.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

G.      Contested and Contingent Claims

The Debtor has no contested Claims.

H.      Executory Contracts and Leases

The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. Rejection or assumption may be effected either pursuant to a Plan of Reorganization or by order of the Bankruptcy Court entered upon motion of the Debtor after notice and a hearing. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection within such time as the Bankruptcy Court may allow. In the case of rejection of employment agreements and leases of real property, the damages are limited under the Bankruptcy Code. In the case of assumption of an executory contract or unexpired lease, the Bankruptcy Code requires that the Debtor promptly cure or provide adequate assurances that they promptly will cure any existing defaults (other than certain types of defaults based upon bankruptcy or the Debtor's financial condition) and provide adequate assurances of future performance under such executory contracts or unexpired leases. The Debtor's executory contracts have been listed in Schedule G of Debtor's Schedules and have been filed with the Court. Debtor will assume all executory contracts as they are necessary for the successful reorganization of Debtor's operations.

I.      Maintenance of Causes of Action

Debtor knows of no avoidance actions or other causes of action they might have.

J.      Discharge

Pursuant to section 1141(d)(5), confirmation of the Plan does not discharge any debts provided for in the Plan.

K.      Retention of Jurisdiction

The Plan provides for the retention of jurisdiction by the Bankruptcy Court over the chapter 11 cases for the purpose of determining all disputes relating to Claims and other issues presented by or arising under the Plan and to determine all other matters pending on the date of confirmation.

L.      Amendments of the Plan

The Debtor may amend or modify the Plan before or after confirmation in accordance with the provisions of section 1127 of the Bankruptcy Code.

M.      Termination of Committees

No creditors's committees were appointed in these cases.

N.      Management and Operation of the Debtor

After confirmation of the Plan, the Debtor's business will be operated by its current management.

VIII.

FEASIBILITY AND RISKS

A.      Feasibility of Confirmation

Several factors can be considered to determine whether the Plan is feasible, including:

1.      Will the plan reorganize the Debtor's financial structure in such a way that the reorganized Debtor will be able to generate necessary cash flow?

2.      Will the reorganized Debtor be solvent? Will it be able to meet its fixed and contingent payment obligations provided for under the Plan as well as obligations incurred in the ordinary course of business, both from a cash flow and an accounting standpoint?

3.      Does the reorganized businesses activity have a reasonable likelihood to operate profitably in the future? Will its cash flow be sufficient?

4.      Is the Debtor sufficiently qualified to handle the operational, financial and other problems likely to be encountered?

The Debtor in this case would disclose the following:

1.      After foreclosure on Debtor's primary real estate, Debtor has sufficient cash from note receivables to be able to fund its chapter 11 plan.

2.      As reflected in Debtor's projected budget, Debtor is solvent and has sufficient income to fund its chapter 11 plan.

3.      Debtor has little business activity that place a financial strain on its income. Debtor is confident that it will be able to manage its affairs in a way that will allow it to operate profitably in the future.

4.      After foreclosure on Debtor's primary real estate, it now has little business activity aside from collecting on passive income. Debtor is qualified to manage its assets profitably and has sufficient income to fund its chapter 11 plan.

B.      Risks Associated with the Plan

There is a risk, though not anticipated, that the Debtor will not be able to generate sufficient cash flow to satisfy the terms of the Plan. However Debtor projects that there is currently sufficient cash flow to service the Plan and expects cash flow to increase once repairs are made to the Property.

IX.

ALTERNATIVES TO PLAN AND LIQUIDATION ANALYSIS

There are three possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (i) the Bankruptcy Court could dismiss the Debtor's chapter 11 case, (ii) the Debtor's chapter 11 case could be converted to one under a chapter 7 liquidation, or (iii) the Bankruptcy Court could consider an alternative Plan of Reorganization proposed by some other party.

A.      Dismissal

If the Debtor's case were to be dismissed, it would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. Claims that were pending before the petition for relief was filed would likely be asserted again, draining the limited assets of the Debtor. The Debtor anticipates that a dismissal would compel it to re-file second petitions for relief under chapter 7, liquidate its assets, after which there likely would be no distributions to any unsecured creditors, priority or otherwise.

B.      Chapter 7 Liquidation

The starting point in determining the amount which members of each impaired class of unsecured Claims would receive in a chapter 7 case is to estimate the dollar amount that would be generated from the liquidation of the Debtor's assets (the "Liquidation Proceeds"). The Liquidation Proceeds of the Debtor would consist of the proceeds from the sale of all of the assets of the Debtor, augmented by the limited cash held by the Debtor. The Liquidation Proceeds would then be reduced by the costs of the liquidation. The Debtor's costs of liquidation under chapter 7 would likely include the fees of trustees, as well as those of counsel and other professionals who would be retained by the trustee; selling expenses; any unpaid expenses incurred by the Debtor during its reorganization case under chapter 11 (such as fees for attorneys, financial advisors, and accountants); and claims arising by reason of the trustee's rejection of contractual obligations incurred by the Debtor during the pendency of the chapter 11 case. These claims, and such other claims which are likely to arise during the liquidation process under chapter 7 will result in a diminution of the Liquidation Proceeds available to pay unsecured creditors. The present value of the distributions from the Liquidation Proceeds (after subtracting the amounts described above) are then compared with the present value offered to each of the classes of unsecured Claims of each such class.

There are a number of factors which lead to the conclusion that in a chapter 7 liquidation all impaired Classes of creditors would receive even smaller values than those suggested by the Liquidation Analysis attached as Exhibit B.

First and foremost, the Liquidation Proceeds would be substantially reduced in paying the costs of liquidation, and the priority and the administrative claims referred to above.

After considering the effect that a chapter 7 liquidation would have on the value of the Debtor's assets, including the costs of a chapter 7 liquidation, the adverse effect of a forced sale on the prices which could be realized for the assets, the adverse impact on the retail business and the delay in the distributions of liquidation proceeds, THE DEBTOR BELIEVES THAT EVERY IMPAIRED CLASS OF CLAIMS WILL RECEIVE DISTRIBUTIONS UNDER THE PLAN WHICH HAVE A SUBSTANTIALLY GREATER PRESENT VALUE THAN THAT WHICH SUCH CLASSES WOULD RECEIVE IN CHAPTER 7 LIQUIDATION.

C.     Alternative Plan

No alternative plans have been proposed by any other party in interest at this time. If an alternative plan were proposed, it would more than likely propose a liquidation of the Debtor and the distribution of cash to Creditors. In comparison to the Debtor's Plan, an alternative plan would not likely provide any greater return to Creditors and any return could even be less due to the additional time and expense necessary to obtain approval of any alternative plan.

X.

CERTAIN UNITED STATES FEDERAL INCOME<br>TAX CONSEQUENCES OF THE PLAN

A.     Introduction

The following discussion summarizes certain United States federal income tax consequences of the implementation of the Plan to the Debtor and Claimants.

The following summary is based on the Internal Revenue Code of 1986, Treasury regulations thereunder, judicial decisions and published rulings and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof. Changes in these rules, or new interpretations of these rules, may have retroactive effect and could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan, while not necessarily complex, is subject to uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the  interpretation that the IRS will adopt. In addition, this summary does not address foreign, state or local tax consequences of the Plan, and it does not purport to address the federal income tax consequences of the Plan to its Claim holders.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES**

**ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE. BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO THE HOLDER OF A CLAIM, ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS IN DETERMINING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES TO THEM OF THE PLAN.**

B.      Tax Consequences to the Debtor

The Debtor is liable for any payroll taxes that must be withheld. Generally, under the terms of the Plan, all current Claims are to be paid in full by the reorganized Debtor, hence they anticipate no tax consequences related to discharge of any debt.

C.      Tax Consequences to Creditors

In General

The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (i) whether its Claim constitutes a debt or security for federal income tax purposes, (ii) whether the Claimant receives consideration in more than one tax year, (iii) whether the Claimant is a resident of the United States, (iv) whether all of the consideration by the Claimant is deemed received by that Claimant as part of an integrated transaction, (v) whether the Claimant reports income using the accrual or cash method of accounting, and (vi) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

XI.

SECURITIES CONSIDERATIONS

The Debtor has issued no securities to the public or otherwise and thus there are no security considerations under this Plan.

XII.

DEFAULT PROVISIONS REGARDING IRS CLAIMS

A failure by the Debtor to make a payment to the IRS pursuant to the terms of the plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the 15th of each month; if there is a default as to the IRS, the IRS must send written demand for payment to the Debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the Debtor can receive up to five (5) notice of default from the IRS, the fifth (5th) default cannot be cured and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all

available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority and unsecured general.

The IRS is bound by provisions of the confirmed plan and is barred under 11 U.S.C. § 1141 from taking any collection action against the Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations of collection remains suspended under 26 U.S.C. § 6503(h) for tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the IRS having been made; or (2) 30 days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

XIII.

CONCLUSION

This Disclosure Statement has attempted to provide information regarding the Debtor's chapter 11 estate and the potential benefits that might accrue to holders of Claims against the Debtor under the Plan as proposed. The Plan is the result of extensive efforts by the Debtor and its advisors to provide the holders of Allowed Claims with a meaningful dividend. The Debtor believes that the Plan is feasible and will provide each holder of a Claim against the Debtor with an opportunity to receive greater benefits than those that would be received by conversion of this chapter 11 cases to ones under chapter 7.

The Debtor, therefore, urge creditors to vote in favor of the Plan.

Dated: June 2, 2019

/s/ *Randy Maldonado*

_____
Randy Maldonado, President

ADELITA CAVADA & ASSOCIATES
Attorneys for Debtor

/s/ *Adelita Cavada*
_____
10004 Wurzbach Rd., #159
San Antonio, Texas 78230
210.630.9306 Telephone
adelita@adelitacavadalaw.com